UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**INDIA CAMPBELL**, an individual,

    Plaintiff,

v.

Case No.

Hon.

**CURBSIDE SOS, INC.**, a Delaware corporation,

    Defendant.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, India Campbell ("Campbell"), by and through her attorneys, for her Complaint against Defendant, Curbside SOS, Inc., (hereinafter referred to as "Curbside"), states as follows:

## PARTIES

1. Plaintiff, Campbell, is an individual who, during the time of her employment with Curbside, lived in the City of Harrison Township, Michigan.

2. Defendant, Curbside, is a foreign profit corporation incorporated in Delaware. Defendant is registered to do business in Michigan and maintains a registered office at 3410 Belle Chase Way, Ste. 600, Lansing, Michigan 48911.

**JURISDICTION AND VENUE**

3. This Court has original jurisdiction over Campbell's claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), and the Family Medical Leave Act ("FMLA") pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because this case arises from events that occurred in Macomb County, which is in the Eastern District of Michigan.

**GENERAL ALLEGATIONS**

5. On October 20, 2023, Curbside offered Campbell employment as a Support Representative in the Customer Support department.

6. Campbell began working for Curbside remotely from her former Michigan home (Harrison Township) on November 6, 2023.

7. Campbell's job duties as a support representative included, but were not limited to: assisting service providers with onboarding to work on Curbside's platform as well as with navigating the app and troubleshooting technical issues; assisting motorists in need of roadside assistance with how to submit a request; communicating with dispatchers and motorists to ensure road service requests were completed in a timely manner.

8. In approximately mid-August 2024, Ms. Campbell informed her Curbside supervisor, Steven Reveles, that she was pregnant with an estimated due date of December 11, 2024.

9. During the same conversation, Reveles advised Campbell she would be eligible for maternity leave only upon: (1) completion of her first year of employment at Curbside (November 6, 2024) and (2) providing 30-day written notice of her need for maternity leave.

10. Campbell responded that she understood, and shared with Reveles that she delivered her other two children a little prematurely. Reveles suggested that Campbell request her maternity leave to begin a month prior to her due date to ensure the company would have enough notice prior to her departure.

11. Shortly after this mid-August conversation between Campbell and Reveles, Reveles informed Campbell that she would be required to complete a "supervised training program" and subsequent evaluation with him.

12. Campbell had never heard of any other Curbside employee being asked to do a "supervised training program" like this.

13. On or about August 30, 2024, Campbell received an e-mail from Reveles with a schedule for the proposed "supervised training program", which was to occur from September 3, 2024 to September 16, 2024.

14. This "supervised training program" was purportedly intended to "further develop and reinforce the skills needed [for Campbell] to meet performance standards." It was essentially a job shadow for Campbell to conduct with other employees.

15. Reveles strongly recommended Campbell complete the supervised training program during daytime business hours rather than during her normally scheduled night shifts. Reveles added that the training would equip Campbell with additional experience needed to manage rarer situations on her own during night shift, like emergency calls.

16. Campbell did not object to the suggested schedule change, but responded to Reveles via e-mail on August 31, 2024 informing him of conflicts on certain training days due to previously scheduled doctors' appointments related to her pregnancy. Reveles advised Campbell to use PTO to attend her appointments.

17. During the "supervised training program", Campbell was assigned to observe and learn from Curbside employees Lisa (last name unknown) and Iesha Armstead during the day shift. Contrary to Reveles suggestion that working the day shift would help Campbell learn due to higher volume of calls and more variety in tasks, Campbell found little to no different in her experiences on day shift versus night shift.

18. When working with Armstead, Campbell found Armstead was frequently busy with other tasks and did not provide any individualized training. Armstead told Campbell she did not understand why Campbell had to do the extra training.

19. Ultimately, Campbell experienced no coaching during the "supervised training program" that could have resulted in changed job performance.

20. On September 18, 2024, Reveles e-mailed Campbell informing her that a new hire would be shadowing her for training purposes. This job-shadow training took place on September 19, 2024.

21. On September 24, 2024, Campbell underwent her post-training program "evaluation" with Reveles. This evaluation was conducted by virtual conference, during which Campbell was asked to perform and explain several job-related tasks. After *two hours*, Reveles told Campbell he had to move on for the day but that another session would be scheduled to finish the evaluation.

22. A second session with Reveles was never scheduled or completed.

23. On October 3, 2024, Campbell informed Curbside's Human Resources representatives, Michele Walker and Stephanie Morris, of her pregnancy and advised that she would like to begin her maternity leave on November 7, 2023 (consistent with her prior conversation with Reveles about beginning leave early).

24. Morris replied that Campbell's leave would not be able to start until the birth of her child unless Campbell could provide a medical reason why she was unable to work prior to delivery.

25. On October 14, 2024, Curbside terminated Campbell's employment during a short virtual meeting with Reveles and Morris, in which they cited "performance issues."

26. Campbell suffered emotional distress following her termination from curbside, which resulted in significant financial hardship for her and her family.

27. Given the late stage of her pregnancy at the time of her termination and the tarnished nature of her employment record due to Curbside's discriminatory actions, Campbell has been unsuccessful in finding new employment and remains unemployed to date.

28. On or about January 26, 2025, Campbell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that Curbside violated Title VII/the PDA, by discriminating and retaliating against her on basis of sex (pregnancy).

29. On or about June 17, 2025 the EEOC issued Campbell a Notice of Right to Sue letter relating to her Charge of Discrimination under Title VII/the PDA.

**COUNT I:**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e *et seq.* – PREGNANCY DISCRIMINATION**

30. Campbell incorporates all preceding paragraphs of this Complaint.

31. Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k), prohibited Curbside from discriminating against Campbell because of or on the basis of pregnancy, childbirth, or related medical conditions, as discrimination "on the basis of sex."

32. Campbell is a protected individual under the PDA.

33. At all relevant times, Campbell was pregnant with her third child.

34. At all times, Campbell was qualified for her job at Curbside.

35. Campbell was subjected to an adverse employment decision when Curbside terminated her on October 14, 2024.

36. There is a causal nexus between Campbell's pregnancy and Curbside's adverse employment decision.

37. Curbside violated Campbell's civil rights under Title VII and the PDA by discriminating against Campbell because of or on the basis of pregnancy, and retaliating against Campbell for engaging in protected activity under the PDA in the following respects:

    a. Terminating Campbell's employment.

    b. Discriminating against Campbell with respect to the terms, conditions, or privileges of employment including, but not limited to, taking adverse employment action against and untimely firing Campbell because of her pregnancy.

    c. Treating Campbell differently than employees who were not pregnant.

    d. Segregating, classifying or otherwise discriminating against and disparately treating Campbell on the basis of her pregnancy.

38. Curbside's reason(s) for its adverse employment decision was pretextual in nature.

39. Curbside knowingly and deliberately engaged in intentional acts of discrimination and violations of the PDA and further, acted with malice and/or with reckless disregard to Campbell's rights under the PDA.

40. As a direct and proximate result of Curbside's adverse actions, Campbell has suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

## COUNT II:
## VIOLATION OF FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. § 2601 *et seq.* – INTERFERENCE

41. Plaintiff hereby incorporates all preceding paragraphs of this Complaint.

42. Plaintiff was to become an eligible "employee" as defined by the FMLA prior to the need for her maternity leave as she would have been employed by Defendant for at least 12 months (as of November 6, 2024) and worked more than

1,250 hours in the 12 months preceding her request for medical leave. 29 U.S.C. § 2611(2).

43. Defendant is an "employer" as defined by the FMLA as it affects commerce in its dealings and employs more than 50 full-time employees. 29 U.S.C. § 2611(4).

44. It is unlawful under the FMLA for an employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615(a)(1).

45. Under the FMLA, Plaintiff was entitled to twelve (12) weeks of medical leave for any twelve (12) month period due to her serious health condition which rendered her unable to perform the functions of her job. 29 U.S.C. § 2612(a)(1)(D).

46. Plaintiff provided Defendant with adequate notice of her need for medical leave for her serious health condition.

47. Defendant interfered with Plaintiff's FMLA rights by terminating her in retaliation for requesting use of the leave she was entitled to.

48. Defendant knowingly and willfully engaged in these intentional violations of the FMLA and acted with malice and/or reckless indifference to Plaintiff's rights under the FMLA.

49. As a direct and proximate result of Defendant's adverse actions, Plaintiff suffered damages, including but not limited to loss of past and future income and loss of employee benefits.

## COUNT III
## VIOLATION OF FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. § 2601 *et seq.* – RETALIATION

50. Plaintiff hereby incorporates all preceding paragraphs of this Complaint.

51. Plaintiff was set to become an "eligible employee" under the FMLA by the time she needed to use FMLA leave following the birth of her child.

52. Defendant is an "employer" under the FMLA.

53. It is unlawful under the FMLA for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

54. Plaintiff was entitled to twelve (12) weeks of medical leave for any twelve (12) month period. 29 U.S.C. § 2612(a)(1)(D).

55. Plaintiff requested a medical leave for the twelve weeks following the birth of her child.

56. Plaintiff intended to return to work at the end of twelve weeks, if not sooner.

57.     Defendant knowingly and willfully engaged in violations of the FMLA and acted with malice and/or reckless indifference to Plaintiff's rights under the FMLA when it terminated Plaintiff's employment.

58.     As a direct and proximate result of Defendant's adverse employment action (involuntary discharge), Plaintiff suffered damages, including but not limited to loss of past and future income and loss of employee benefits.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests relief and damages as follows:

a. A declaratory judgment that Defendant violated Title VII/the PDA and FMLA thorough its discriminatory treatment and ultimate termination of Plaintiff;

b. A grant of monetary judgment in favor of Plaintiff and against Defendant awarding all economic, liquidated, compensatory and punitive damages available under the law;

c. Attorneys' fees and costs incurred by Plaintiff in filing this action to the extent allowed by law;

d. Award of pre- and post-judgment interest to Plaintiff on all damages; and

e. Any other legal or equitable relief the Court deems appropriate.

Date: July 15, 2025                Respectfully submitted,

/s/ Jesse L. Young
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Avenue, Suite 600
Kalamazoo, MI 49007
Tel: (269) 250-7501

jyoung@sommerspc.com

Paulina R. Kennedy (P84790)
SOMMERS SCHWARTZ, P.C.
One Town Square, 17th Floor
Southfield, Michigan 48076
Tel: (248) 355-0300
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the Proposed Collective*

# CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Jesse L. Young*
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.